**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---

In re:                                                              Chapter 11

   **41-23 HAIGHT REALTY INC.,**                      No. 19-43441-nhl
   **a/k/a 41-23 HAIGHT STREET REALTY, INC.,**

                       **Debtor.**          **Hon. Nancy Hershey Lord**

---

**THE OFFICIAL COMMITTEE OF**
**UNSECURED CREDITORS OF 41-23 HAIGHT**
**REALTY INC., a/k/a 41-23 HAIGHT STREET**
**REALTY, INC.,**

                       **Plaintiff,**

                                        Adv. Pro. No. 21-_____-nhl

   v.                                                        **COMPLAINT**

**WING FUNG CHAU**

                  **Defendant(s).**

---

     The Official Committee of Unsecured Creditors (the "Committee"), of 41-23 Haight Realty Inc., a/k/a 41-23 Haight Street Realty, Inc. ("Haight Realty" or, the "Debtor"), by and through its undersigned counsel, as and for its Complaint against Wing Fung Chau ("Defendant"), based on actual knowledge and information and belief, alleges as follows:

## NATURE OF THE PROCEEDING

     1.     This adversary proceeding is the next step in the Committee's continuing efforts to recapture and return to the Debtor's estate money that was fraudulently misappropriated from numerous individuals who were duped through deceptive business practices by Defendant and Haight Realty's other insiders into entering into contracts for the construction and improvement of homes and commercial real estate.

2.      At all times relevant hereto, Defendant and Haight Realty's other insiders acted adversely to the interests of Haight Realty.  Collectively, they lured unsophisticated individuals into paying them to build their dream home, when their actual intent was to misappropriate funds that were to be held in trust and bilk these investors of their life savings for their own personal gain.

3.      Defendant and the other insiders manipulated individuals into entering into contracts with the promise of delivering them a home through fraudulent and deceptive business practices, while violating provisions of New York lien law through misappropriating the money paid to them by innocent investors for their own personal gain.  Defendant is entrenched in both the Chinese-American community of Queens, New York, as well as the residential and commercial real estate development business, being well positioned to carry out a wide-ranging fraud that includes Haight Realty and various other affiliated individuals and entities.

4.      Upon information and belief, and subject to amendment as additional information becomes available, Defendant and Haight Realty's other insiders took deposits and other money from Haight Realty's investors and misappropriated it for their own personal gain.

5.      Upon information and belief, and subject to amendment as additional information becomes available, Defendant and Haight Realty's other insiders continued to attempt coercing creditors of the Debtor to withdraw their claims post-petition, as well as interfered with the Trustee's sale process and administration of the Debtor's estate.

6.      The actions of Defendant and Haight Realty's other insiders caused Haight Realty to suffer actual damages.

7.      Haight Realty was operated as if it were the personal piggy bank of Defendant and Haight Realty's other insiders, allowing them to fund their other business ventures and personal expenses.  The means of diverting money from Haight Realty and those who sought to have homes constructed for them with their life's savings ranged from the extraordinary (allowing Defendant and

Haight Realty's other insiders to purchase other real estate in furtherance of their fraudulent scheme), to the routine (using customer funds to pay their monthly expenses). The means of doing so ranged from the simple (merely diverting cash and other payments into other accounts), to the complex (fabricating other real estate ventures to perpetuate their fraud and coercing investors to pay the insiders more money in order not to lose their initial investments). These transfers necessitate a judgment in favor of the Committee for the benefit of Haight Realty's estate and its defrauded customers.

8.      Due to Defendant's connections to the Queens community and strong ties to the real estate acquisition and development market, coupled with Defendant's deceptive business practices targeted at New York consumers generally, the Committee further seeks entry of an injunction forever barring Defendant from practicing in the real estate industry.

## JURISDICTION AND VENUE

9.      The Committee brings this adversary proceeding pursuant to, *inter alia*, sections 105(a), 542, 544, 550(a), and 551 of title 11 of the United States Code (the "Bankruptcy Code"), 28 U.S.C. § 2201, New York Lien Law ("N.Y. Lien Law"), New York General Business Law ("N.Y. Gen. Bus. Law"), New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), New York common law, and other applicable law, for a constructive trust, an accounting, and to recover money improperly received by Defendant from Haight Realty due to Defendant's fraud, breaches of corporate and N.Y. Lien Law fiduciary duties, unfair and deceptive business practices, conversion, negligence, and unjust enrichment, as well as for declaratory relief and an injunction entered against Defendant forever barring them from practicing or otherwise participating in the sale, development, or investment in commercial and residential real estate.

10.     This adversary proceeding relates to the involuntarily commenced chapter 11 main

bankruptcy case titled *In re 41-23 Haight Realty Inc., a/k/a Haight Street Realty, Inc.*, No. 19-43441-nhl, currently pending before Hon. Nancy Hershey Lord of the United States Bankruptcy Court for the Eastern District of New York, Conrad B. Duberstein U.S. Courthouse.

11.    The Committee consents to the entry of a final judgment or order with respect to only this adversary proceeding if it is determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

12.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (F), (H), and (O).

13.    Venue in this district is proper under 28 U.S.C. § 1409.

## BACKGROUND

14.    On August 8, 2019, following the filing of a petition for involuntary relief by certain creditors of the Debtor on June 4, 2019 (the "Petition Date"), and a hearing held on the Debtor's motion to dismiss the involuntary petition, the United States Bankruptcy Court for the Eastern District of New York (the "Court"), entered an Order for Relief under Bankruptcy Code section 303(h) [ECF No. 16].  The Involuntary Petition was filed as a result of Haight Realty's failure to honor contractual and other commitments with respect to constructing and developing residential and commercial units at the Debtor's real properties located in Queens County and identified as [Block] 5063, Lots 44, 45, 46, 47, 48, 49, 50, 51, 52, 53 and 55 Haight Street, Flushing, New York 11355 (the "Real Property").

15.    Prior to the Petition Date, on October 22, 2018, 41-31 Haight Street Lender LLC ("Haight Street Lender") commenced a foreclosure proceeding against Haight Realty, titled *41-31 Haight Street Lender LLC v. 41-23 Haight Realty Inc., et al.*, No. 716119/2018, in Queens County Supreme Court (the "Foreclosure Proceeding" and references to its pleadings and other filings, "NYS ECF No."").   On June 25, 2019, Haight Realty filed a *Notice of Filing of Involuntary Bankruptcy*

4

*and of the Automatic Stay* in the Foreclosure Proceeding [NYS ECF No. 143].

16.    On July 22, 2019, Haight Street Lender filed a motion seeking, among other things, the appointment of a chapter 11 trustee [ECF No. 7].  On August 12, 2019, the Court entered an order appointing Gregory Messer, Esq., chapter 11 trustee (the "Trustee"), to manage the Debtor's estate, pursuant to Bankruptcy Code sections 1104 and 1106 [ECF No. 20].

17.    On July 17, 2020, the Office of the United States Trustee appointed the Committee pursuant to Bankruptcy Code section 1102 [ECF No. 221].  On September 3, 2020, the Office of the United States Trustee filed its *Amended Appointment of Official Committee of Unsecured Creditors* (the "Amended Appointment") [ECF No. 297].  The Committee consists of the following members: (i) Matthew Krepil, and (ii) Wei Zhu.

I.    **The Trustee's Various Attempts to Sell the Debtor's Real Property, Two of Which Were Interfered With by Haight Realty's Insiders**

18.    Before the Committee's appointment, on July 4, 2020, the Trustee filed a motion seeking authority to sell the Real Property free and clear of any liens pursuant to Bankruptcy Code section 363(f) (the "Sale Motion") [ECF No. 183].  On July 21, 2020, the Court entered an order granting the relief sought in the Sale Motion, including approving August 5, 2020 as the date of the Virtual Auction, approving the Revised Sale Terms and the Revised Notice of Sale (as each of those terms are defined in the Sale Motion), and scheduling a hearing to confirm the sale of the Real Property for August 6, 2020.  On August 13, 2020, the Court entered the *Order Confirming the Sale of the Debtor's Real Property to JCBD Investment Inc./Jinyu Zhang or Its Designee as the Successful Purchaser at the Virtual Public Auction Held on August 5, 2020 Free and Clear of All Liens, Claims, Encumbrances and Other Interests and Related Relief* [ECF No. 262].  On October 15, 2020, the *Report of Public Sale* was filed with the Court [ECF No. 337].

19.    However, prior to the Trustee's successful sale of the Real Property, the Debtor's

insiders interfered with the Trustee's two prior attempts to sell the Real Property, which resulted in chilling interest in the sale of the Real Property and a marked decrease in the property's value due to Defendant's and the other insiders' interference with the sale process.

**A. The Initial Stalking Horse Agreement—The Trustee's First Attempt to Sell the Debtor's Real Property Thwarted by Interference By the Debtor's Insiders**

20.     The Trustee entered into a stalking horse agreement with Tu Kang Yang (unknown to the Trustee at the time, he is a partner of Wing Fung Chau a/k/a Andy Chau and an insider of the Debtor) and Salena Chau (unknown to the Trustee at the time, she is the daughter of Wing Fung Chau a/k/a Andy Chau and an insider of the Debtor) (together, the "Initial Offerors") for $31,000,000 with an initial deposit to be paid of $3,100,000.  In the Trustee's Motion to approve the initial stalking horse agreement (the "Initial Stalking Horse Agreement"), the Trustee explained that the Initial Offerors had only partially paid the deposit, which cleared the Trustee's account with an additional commitment by the Initial Offerors to pay the remaining balance immediately following the hearing seeking approval of the Initial Stalking Horse Agreement.  Pursuant to an Order entered April 9, 2020, the Court approved, among other things, the Initial Stalking Horse Agreement with the Initial Offerors (the "April 9th Order").  *See* ECF Nos. 127–29; 135.

21.     Upon entry of the April 9th Order, the Initial Offerors failed to deliver the 10% deposit as required and therefore defaulted under the Initial Stalking Horse Agreement.  The Initial Offerors moved by order to show cause to be released from the Initial Stalking Horse Agreement, which the Court declined.  *See* ECF Nos. 138 & 139.

22.     As a result, the Trustee's first attempt to sell the Real Property failed because of the interference of the Debtor's insiders.

**B. The Second Stalking Horse Agreement—The Trustee's Second Attempt to Sell the Debtor's Real Property Is Also Thwarted by Interference By the Debtor's Insiders**

23.     The Trustee thereafter remarketed the Real Property and received an offer to purchase the Real Property for $27,300,000 from Mei Yang Ko (unknown to the Trustee at the time, the mother of Wing Fung Chau a/k/a Andy Chau and an insider of the Debtor) (the "Second Offeror"), the terms of which were memorialized in the stalking horse agreement dated April 20, 2020 (the "Second Stalking Horse Agreement"), and incorporated the Original Sale Terms.

24.     The public auction was scheduled to take place on May 12, 2020.  In advance of the auction, on April 29, 2020, the Trustee filed a motion requesting a hearing on shortened notice seeking approval of the Second Stalking Horse Agreement, which the Court granted.  On May 5, 2020, the Initial Offerors filed an Opposition to the Second Stalking Horse Agreement [ECF No. 153].  On May 8, 2020, the Court entered an Order approving, among other things, the Second Stalking Horse Agreement with the Second Offeror [ECF No. 154].

25.     No other bidders registered for the virtual public auction, and as a result the Second Offeror was the successful purchaser of the Real Property with a purchase price of $2,730,000, *plus* the Buyer's Premium and any and all transfer taxes.  On May 14, 2020, the Court conducted a hearing to consider the sale results, and on May 19, 2020, the Court entered the *Order Confirming the Sale of the Real Property to the Second Offeror* (the "Sale Confirmation Order") [ECF No. 158].

26.     Upon entry of the Sale Confirmation Order, the parties prepared for closing on the sale.  Then, on June 10, 2020 (one day prior to the originally scheduled Closing Date), the Second Offeror advised the Trustee of her inability to close and requested an extension.  The Trustee agreed, conditioned on the Second Offeror executing an acknowledgment and paying an additional deposit of 10% of the purchase price.

27.     The Second Offeror failed to provide the additional 10% deposit and therefore defaulted under the terms of the Second Stalking Horse Agreement, the Original Sale Terms, and

the Sale Confirmation Order.

28.    As a result, the Trustee's second attempt to sell the Real Property also failed because of the interference of the Debtor's insiders.

## II.    **Allegations of Fraud, Collusion, and Insider Malfeasance**

29.    As early as August 22, 2019—only three months past the Petition Date—counsel to creditors LDWS and T.8.J., Ricardo R. Morel, Esq.,[1] alleged through correspondence filed with the Court that Bo Jin Zhu, one of the Debtor's principals, had been "contacting similarly-situated creditors to dissuade them from participating in these proceedings[]" (the "Morel Correspondence") [ECF No. 39]. The Morel Correspondence also alleged that Mr. Zhu "promised these creditors that if they do not participate in this action, the Debtor will deliver the creditors' properties as provided in the respective contracts of sale, within a month. Upon information and belief, the Debtor has been trying to extract further payments in consideration of these false promises." *Id.* Furthermore, counsel stated, "Mr. Zhu is seeking to meet with the creditors at 2:00 PM. He told them to cancel the bankruptcy, and he will pay them next month." *Id.*

30.    The Morel Correspondence purported to further expressed the interests of the following individuals, who "are reluctant to appear or participate as a result of current efforts by Debtor 41-23 Haight Realty Inc., by Mr. Bo Jin Zhu": (i) Xue Mei Chen; (ii) Yi Shou Jiang; (iii) Xue Fei Lu; (iv) Inga Xue Hua Liu; (v) Mei Yan Liu; and (vi) Rui Jin Wang. *See id.*

### A.    **The Trustee's Stay Violation Motion Brought Against Wing Fung Chau a/k/a Andy Chau, 77 Shi Inc., Ken Chung, and Season Abstract Inc., all Insiders of Haight Realty**

31.    On October 8, 2019, the Trustee filed his *Motion of Chapter 11 Trustee to Enforce the*

---

[1] Mr. Morel has appeared throughout the pending above-captioned proceeding, and has filed proofs of claim (each, a "POC"), on behalf of the following general unsecured creditors: (i) LDWS (POC No. 5 in the amount of $3,500,000); (ii) T.8.J. (POC No. 6 in the amount of $3,500,000); (iii) Xue Hua Liu (POC No. 7 in the amount of $260,000); (iv) Xue Mei Chen (POC No. 8 in the amount of $550,000); and (v) Xue Fei Liu (POC No. 9 in the amount of $550,000).

*Automatic Stay and Award Damages for Willful Violations of the Automatic Stay* (the "Stay Violation

Motion") [ECF No. 76].  The Stay Violation Motion states that, on October 4, 2019 (four months

post-petition), Season Abstract Inc. caused a document titled Memorandum of Contract (the

"MOC") to be recorded in the Office of the City Register of the City of New York against the Real

Property.  *See* Stay Violation Motion at ¶18.  The MOC was signed by an unknown third party on

behalf of the Debtor (signature illegible) and Ken Cheng on behalf of 77 Shi Inc. ("77 Shi").  *See id.*

The MOC, which is not notarized, purported to be dated as of September 10, 2015.  *See id.*  The

MOC alleges that a Contract was entered into between the Debtor and 77 Shi for the sale of the

Real Property for the sum of $7,000,000 of which $4,000,000 was allegedly paid and $3,000,000

remains outstanding.  *See id.*  The MOC provided that a closing was scheduled for December 31,

2019.  *See id.*  Signatures on the corresponding Affidavit of Compliance were notarized on October

3, 2019.  *See id.*  Wing Fung Chau purported to sign the Affidavit of Compliance on behalf of the

Debtor and Ken Cheng signed on behalf of 77 Shi.  *See id.*  The Trustee asserted that according to

the Debtor's financial records provided up to that time, Wing Fung Chau had no authority to sign

any document on behalf of the Debtor, and that Bo Jin Zhu is the only equity shareholder and

President of the Debtor.  *See id.* at ¶19.

32.     On October 17, 2019, Geng & Associates, PC,[2] filed a joinder to the Stay Violation

Motion, bringing attention to the fact that the Debtor and 77 Shi both share the same address, 86-22

---

[2]  Geng & Associates has appeared throughout the pending above-captioned proceeding and has filed proofs of claim, on behalf of the following general unsecured creditors: (i) Wen Mei Wang a/k/a Amy Johnson (POC No. 1 in the amount of $428,666.67); (ii) Xian Kang Zhang (POC No. 2 in the amount of $428,666.67); (iii) Yu Qing Wang (POC No. 3 in the amount of $428,666.67); (iv) Zi Ying Chen (POC No. 15 in the amount of $575,000.00); (v) Min Dong Weng (POC No. 16 in the amount of $575,000.00); (vi) Jian Feng LLC (POC No. 17 in the amount of $1,094,794.38); (vii) Shi Yong Lin (POC No. 18 in the amount of $348,629.00); (viii) Bing Wen Lin (POC No. 19 in the amount of $348,629.00); (ix) Xiu Chen (POC No. 20 in the amount of $348,629.00); (x) Feng Lin (POC No. 21 in the amount of $348,639.00); (xi) Lam Kam Ho Holand Development LLC (POC No. 24 in the amount of $1,417,038.22); (xii) Yungwa Ho (POC No. 25 in the amount of $1,475,973.40); (xiii) Rihong Zhang (POC No. 27 in the amount of $455,000.00); (xiv) YBL NY Inc (POC No. 28 in the amount of $48,000.00); (xv) Chun Yin Chen (POC No. 29 in the amount of $480,000.00); (xvi) Urban Architectural Design PC (POC No. 30 in the amount of $30,000.00); (xvii) Yi Shou Jiang (POC No. 36 in the amount of $309,751.23); (xvii) Mei Fung Stella Leung (POC No. 37 in the amount of $325,087.54); (xviii) Xing Ju Lin (POC No. 38 in the amount of $287,920.00); (xix) Mei Yan Liu (POC No. 39 in the amount of $379,720.55); and (xx) Rui Jin Wang (POC No. 40 in the amount of $160,000.00).

Broadway Fl 2, Elmhurst, New York 11373 [ECF No. 84].

33.    The Court entered a Consent Order resolving the Stay Violation Motion [ECF No. 90], which was later amended on December 1, 2019 (the "Stay Violation Consent Order") [ECF No. 100]. The Stay Violation Consent Order provided, among other things, that (i) the automatic stay is in effect to prohibit Wing Fung Chau, 77 Shi, Ken Chung, Season Abstract Inc., and any parties purporting to act on their behalf from taking any further acts against the Debtor's assets in violation of the Code section 362(a) automatic stay; (ii) the New York City Department of Finance Office of the City Register was directed to strike the MOC; and (iii) Wing Fung Chau was directed to take all steps necessary to cause the MOC to be stricken by the Office of the City Register. *See* Stay Violation Order. The Stay Violation Order was agreed and consented to by Wing Fung Chau individually, Eric Snyder, Esq., of Wilk Auslander (counsel to Wing Fung Chau), and counsel to the Trustee. *Id.*

34.    The Stay Violation Motion was brought against the following insiders of Haight Realty: (i) Wing Fung Chau a/k/a Andy Chau, (ii) 77 Shi Inc., (iii) Ken Chung, and (iv) Season Abstract Inc. (collectively, the "Stay Violation Defendants").

35.    No opposition was filed by any of the Stay Violation Defendants.

**B. Allegations Against the Debtor's Insiders in the Ming Yun Yang and LDWS Order to Show Cause and Temporary Restraining Order**

36.    On June 9, 2020, an *Order to Show Cause and Temporary Restraining Order* was purportedly filed by Ming Yun Yang (the "Yang & LDWS OSC") [ECF No. 161], with sworn declarations in support submitted by (i) Ming Yun Yang ("Yang Dec."), (ii) Wendy Wen Qing Lu ("Lu Dec."), and (iii) Yimin Chen, Esq. ("Chen Dec."). The Yang OSC sought the following relief: (a) to vacate the Second Stalking Horse Agreement between the Trustee and Mei Yang Ko, (b) to preliminarily enjoin the Trustee and his agents from taking any steps to close title on the Real

Property, and (c) to enjoin the Trustee from otherwise transferring or encumbering the Real

Property.

37.     Yimin Chen, Esq., attested under penalties of perjury, among other things, that:

(i) he was the attorney for Ming Yun Yang, *see* Chen Dec. at ¶1; (ii) Wing Fung Chau was the 100%

shareholder of the Debtor, its prior president, and the "actual controller of the Debtor now[]", *see id.*

at ¶9; (iii) the $46,915,017.06 aggregate alleged value of claims filed in the Debtor's bankruptcy case

"was not going to its attorney's escrow account.  Most of these proceeds were paid by cash and not

going to the Debtor's company account[]", *see id.* at ¶19; (iv) Ming Yun Yang executed a contract of

sale with Haight Realty in 2012 to purchase a certain condominium unit and "paid $240,000.00

totally in four times to the Debtor to proceed the contract to purchase the Condo[]", *see id.* at ¶23;

(v) Ming Yun Yang was not scheduled as a creditor and therefore received no notice of the

bankruptcy case, the Second Stalking Horse Agreement, or the subsequent auction held on May 12,

2020, *see id.* at ¶¶24–25; (vi) LDWS recorded a judgment lien on the Real Property that should have

taken priority over the liens granted to the Haight Street Lender post-petition, *see id.* at ¶27; and

(vii) the sale of the Debtor's property pursuant to the Second Stalking Horse Agreement had other

alleged infirmities, *see id.* at ¶¶28–30.

38.     Ming Yun Yang declared under penalties of perjury, in pertinent part:

> According to the Contract, I paid $20,000.00 cash on June 11, 2012,
> $30,000.00 via a check, $50,000.00 cash on September 22, 2015 and
> $140,000.00 cash on October 26, 2015.  I paid $240,000.00 totally, in which
> $210,000.00 was by cash, to the Debtor to proceed the Contract to purchase
> the Condo.  All money I paid by cash was not going to Debtor attorney's
> escrow account, nor even going to the Debtor's company account.  The
> Debtor owed $46,915,017.06 to the Real Property buyers including me.
> Most of the purchase price was paid by cash and was not going to Debtor
> attorney's escrow account, nor even going to the Debtor's company account.

*See* Yang. Dec. at ¶¶3–4.

39.     Wendy Wen Qing Lu stated under penalties of perjury that she is "the president of

LDWS, LLC," *see* Lu Dec. at ¶8, and that she "recognized Wing Fung Chau since 2007 and we know each other very well as we met many times in the past 13 years." *See id.* at ¶2. The Lu Dec. further states that based on representations made by Wing Fung Chau, LDWS entered into a contract of sale with Haight Realty in March 2010 to purchase one of the townhomes to be constructed on the Real Property. *See id.* at ¶¶7–8. Finally, Wendy Wen Qing Lu states in pertinent part:

> The $1,100,000.00 LDWS, LLC paid was not going to Debtor attorney's escrow account. Wing Fung Chau and the Debtor made $46,915,017.06 by cheating more than forty Real Property buyers to reach contract of sale. Most of the purchase price was paid by cash and was not going to Debtor attorney's escrow account, nor even going to the Debtor's company account.

*See id.* at ¶¶10–11.

40. On June 12, 2020, another *Affidavit of Ming Yun Yang* was filed with the Court ("2d Yang Dec.") [ECF No. 163]. With her second Affidavit sworn to under penalties of perjury, Ming Yun Yang states in pertinent part:

> I just learnt that an attorney by the name of Yimin Chen submitted an Order to Show Cause on my behalf to this Court on or about June 9, 2020. . . . I never retained this attorney by the name of Yimin Chen, Esq. with an address at 39-15 Main Street, Suite 502, Flushing, New York 11354, Telephone # 718-886-4858. The purported "Declaration of Ming Yun Yang" signed by a person by the name of Ming Yun Yang without notary stamp is not my signature. I never retained any attorney to file an Order to Show Cause in this court on my behalf.

*See* 2d Yang Dec. at ¶¶2–5.

41. By correspondence dated June 12, 2020, Ricardo Morel, Esq., counsel to LDWS, submitted his declaration regarding the Yang OSC and the subsequent affidavit submitted by Ming Yun Yang alleging her name was forged to the Ming Yun Yang Order to Show Cause (the "Morel Dec.") [ECF No. 164]. Mr. Morel represented the following:

> Your undersigned is not involved or associated with the Chen law firm who made the application. As stated, we joined in the application with regard to our client LDWS, and we take no adverse position with regard to the applications concerning other creditors. Upon investigation, it has come to my attention that the affidavit of MING YUN YANG (DE 163) is, in fact, a

further product of intimidation, coercion, and criminal activities on the part of debtors in these proceedings."

*See* Morel Dec. at ¶¶7–8.

42. Furthermore, Mr. Morel averred:

Upon information and belief, the affidavit of Ming Yun Yang submitted to the Court (Doc 163) [2d Yang Dec.], has been coerced, and is in fact a product of the continuing fraud being perpetrated by the debtors in this matter. The latter have continually sought to interfere with these proceedings and are guilty of the following, and should be held accountable therefore: 18 U.S.C. 1512 etc.

*See* Morel Dec. at ¶11.

43. Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

### C. Allegations Against the Debtor's Insiders in the LDWS and Xiu Mei Chen Order to Show Cause and Temporary Restraining Order

44. On June 15, 2020, less than two weeks after the Yang & LDWS OSC was filed, LDWS and Xiu Mei Chen filed their *Order to Show Cause and Temporary Restraining Order*, seeking to enjoin Wing Fung Chau a/k/a Andy Chau, Xiu Qin Shi a/k/a Amy Shi (Wing Fung Chau's wife), Mei Yang Ko (Wing Fung Chau's mother), Salena Chau (Wing Fung Chau's daughter), Bo Jin Zhu (a shareholder of Debtor), Hok Kwai Chau (a shareholder of the Debtor), Chun Yin Chen (a shareholder of the Debtor), Tu Kang Yang (Wing Fung Chau's partner), and Dongmei Li, together with their agents, attorneys, and employees from interfering with the Debtor's estate and the Real Property (the "LDWS & Chen OSC") [ECF No. 165].

45. The LDWS & Chen OSC was filed by Yimin Chen of the Law Offices of Chen & Associates as co-counsel to LDWS and Xiu Mei Chen ("Yimin Chen Dec."), and included the Affirmation of Ricardo Morel, Esq., who also appeared as co-counsel to LDWS and Xiu Mei Chen ("2d Morel Dec."), and the Declaration of Xue Mei Chen ("Xue Chen Dec.").

46.    The LDWS OSC alleged that, post-petition, among other things, that:

    a.    Xiu Qin Shi a/k/a Amy Shi (Wing Fung Chau's wife) contacted individuals who invested in Haight Realty and requested they not be listed as creditors in the Debtor's bankruptcy, in exchange for her and the Debtor paying them back half of what they were owed, *see* Yimin Chen Dec. at ¶14;

    b.    on May 20, 2020 Xiu Qin Shi contacted people to attend an open house at the Real Property, at which Wing Fung Chau, Xiu Qin Shi, Tu Kang Yang, Dongmei Li, and a certain "Mr. Miao" appeared, and which Xiu Mei Chen attended along with one hundred other people, where Xiu Qin Shi informed Xue Mei Chen that she could not get title to the condominium she purchased because she joined in the bankruptcy case, *see* Yimin Chen Dec. at ¶15;

    c.    Xiu Qin Shi later told Xue Mei Chen she could take keys to her condo if she immediately paid Xiu Qin Shi an additional $350,000, *see* Yimin Chen Dec. at ¶16;

    d.    Xiu Qin Shi approached another purchaser, Ai Zhen Chen, with the same proposition, and Ai Zhen Chen wired an additional $200,000 to Xiu Qin Shi on June 10, 2020, *see* Yimin Chen Dec. at ¶17;

    e.    on May 26, 2020, the various insiders to the Debtor organized a company named 41 Haight Realty LLC and sent a subscription agreement to the public, which stated that any potential subscriber needs to pay $328,900.00 to receive the membership interest of 41 Haight Realty LLC, which would hold title to the Real Property, *see* Yimin Chen Dec. at ¶18;

    f.    the insiders to the Debtor "have proffered to our clients 'contracts' for the sale and acquisition of the apartment units, as described[,]" *see* Morel Aff. at ¶4; and

    g.    Kevin K. Tung represented Ming Yun Yang in this Bankruptcy Case, drafted the 2d Yang Aff., notarized the 2d Yang Aff., and e-filed it through his attorney e-filing account, meanwhile Kevin K. Tung also represents Hok Kwai Chau and Chun Yin Chen—two shareholders of the Debtor—in the underlying foreclosure action pending in the New York State Supreme Court, County of Queens (Index No. 716119/2018), *see* Yimin Chen Dec. at ¶29.

47.    Although Yimin Chen of the Law Offices of Yimin Chen filed a *Motion to Withdraw as Co-Counsel* to LDWS and Xuemei Chen on July 19, 2020 [ECF No. 223], Yimin Chen remains co-counsel of record to LDWS.  On December 13, 2020, the Court entered an Order relieving Ricardo

Morel, Esq. as counsel to LDWS, T.8.J., and Wendy Wenqin Lu [ECF No. 377].

48.     Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

### D. The Trustee's Application for a Temporary Restraining Order and Its Allegations Against the Debtor's Insiders

49.     On June 17, 2020, the Trustee filed his Application for an *Order Scheduling Emergency Hearing on Shortened Notice to Seek a Temporary Restraining Order*, seeking to temporarily restrain Wing Fung Chau a/k/a Andy Chau, Xiu Qin Shi a/k/a Amy Shi (Wing Fung Chau's wife), Mei Yang Ko (Wing Fung Chau's mother), Salena Chau (Wing Fung Chau's daughter), Bo Jin Zhu (shareholder of the Debtor), Hok Kwai Chau (a statutory insider of the Debtor), Chun Yin Chen (a statutory insider of the Debtor), Tu Kang Yang (Wing Fung Chau's partner), Dongmei Li, 77 Shi, Ken Chung, and any parties purporting to act on behalf of or in concert with them from interfering with, or taking any adverse action against, the Debtor's estate, including but not limited to those against the Real Property (the "Trustee's TRO Application") [ECF No. 167].

50.     On June 26, 2020, the Court entered an *Order Granting the Chapter 11 Trustee's Injunctive Relief* [ECF No. 171].

51.     Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

### E. Allegations Against the Debtor's Insiders in the Yuzheng Miao Motion to Intervene and Motion for Reconsideration

52.     On August 8, 2020, Yuzheng Miao filed his *Motion of Yuzheng Miao Seeking Entry of an Order, Pursuant to Rules 2018 and 7024 Granting Yuzheng Miao's Intervention In This Proceeding, and Pursuant to FRBP Rules 9023 and 9024 Granting Reconsideration of the Ruling and Order Authorizing the Retention of Deposits by the Estate* (the "Miao Motion to Intervene"), together with the sworn *Affidavit of Yuzheng*

*Miao* ("Miao Aff.") [ECF No. 256]. Pursuant to the Miao Motion to Intervene, Miao sought, among other things, (i) to intervene in the bankruptcy proceeding, (ii) reconsideration of the rulings made at the July 20, 2020 hearing, at which the Court authorized the Trustee to retain a portion of the First Retained Deposit and the retention of the entire Second Retained Deposit, and (iii) directing the refund of both the First Retained Deposit and the Second Retained Deposit, or in the alternative, directing the refund to Miao of $1,828,300.

53.     With the Miao Motion to Intervene, it was alleged that Miao "contributed millions of toward two stalking horse offers made on his behalf and others." *See* Miao Motion to Intervene at ¶1. Miao further alleged that his "decision to invest was based on misrepresentations and omissions made by Wing Fung Chau a/k/a Andy Chau ("Andy"), who was responsible for raising the money needed by the Buyers to make the offers and eventually close on the Proposals[,]" which included "the amount of the required deposit, falsely representing that sufficient funds to meet the Proposals' requirements had been raised, failure to disclose that the first offer was withdrawn, failure to disclose the terms of the Proposals or provide any documentation to Miao (who was not represented by counsel), and essentially leaving Miao in the dark regarding the transactions." *See* id.

54.     Miao represented that he invested a total of $983,300 in what would become the First Retained Deposit. *See* Miao Aff. at ¶1. Allegedly having been offered an equity interest in the Real Property, and told by Wing Fung Chau a/k/a Andy Chau that an additional deposit was required "otherwise, I would lose all the money I had invested in this Property[,]" *see id.* at ¶12, Miao states he contributed an additional $845,000 to what became the Second Retained Deposit, *see id.* at ¶13. The Miao Motion to Intervene and the Miao Aff. contain conflicting statements and other representations regarding whether he was aware that the Real Property was being sold through the Debtor's bankruptcy case. *Compare* Miao Motion to Intervene at ¶¶61 & 66, *with* Miao Aff. at ¶4; Exs. E–G.

55.    On August 25, 2020, the Trustee filed his objection to the Miao Motion to Intervene [ECF No. 268].  On September 25, 2020, the Court entered an order denying the Miao Motion to Intervene in its entirety, with prejudice [ECF No. 327].

56.    Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

57.    Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

### F.  Allegations Against the Debtor's Insiders in the LDWS and T.8.J. LLC Motion to Compel Discovery

58.    On August 27, 2020, LDWS and T.8.J. LLC ("T8J"), by and through their counsel Ricardo R. Morel, Esq., filed their *Motion of LDWS LLC and T.8.J. LLC for an Order Directing Debtors to Disclose Creditors Who Have Settled and/or May be Settling Debts with Debtors* (the "LDWS & T8J Motion to Compel"), together with the Declaration of Wendy Wen Qin Lu, as the CEO of LDWS and officer of T8J, in support of the LDWS & T8J Motion to Compel ("2d Lu Dec.") [ECF No. 279].  The LDWS & T8J Motion to Compel sought the following relief:

> (1)  Order retaining Applicant as judgment Creditor and not allow Applicant to be "wiped out";
> (2)  Order that Wing Fung Chau "Andy" Chau and Xiu Qin "Amy" Shi provide a List of Creditors to the Court who have settled and/or may be settling their debt with Wing Fung "Andy" Chau, Xiu Qin "Amy" Shi (Andy Chau's wife), and/or Bo Jin ZHU (hereinafter collectively and individually, "Debtors").

2d Lu Dec. at pg. 1.

59.    Furthermore, the LDWS & T8J Motion to Compel alleged the following:
> In addition to Debtors' breach of our Contract and wrongfully declaring me to be in default in 2015 (prompting me to seek a Judgment, as described herein), it is to the best of my knowledge that I believe Debtors (Andy Chau, Amy Shi, and Bo Jin Zhu) illegally and/or unethically, in violation of the rules of this Court, contacted all the small creditors in or about 2019 by conducting a meeting, attended by approximately 30 creditors.  At this meeting, Andy and Amy (husband and wife) told all the creditors to not join

> in the bankruptcy lawsuit, and that they will pay back their money if they do not join in the lawsuit. Amy used fear tactics to dissuade their participation by threatening to avoid payment if they do not settle with them directly. I believe over 10 people withdrew from the bankruptcy lawsuit and some were paid back their money by Andy and Amy.
>
> As far as I know, the following individuals settled and obtained the following amount of money: Rai Jin WANG (was given $115K); Mei Yan LIU ($165K); and Yi Chou JIANG $145K).
>
> I believe Andy and Amy dissuaded creditors from participating in the bankruptcy because they feared their inappropriate and/or fraudulent activities will be discovered by the Court and feared criminal prosecution.

2d Lu Dec. at ¶¶10–12.

60. On September 22, 2020, the Court held a hearing at which it denied the relief sought by the LDWS & T8J Motion to Compel.

61. Neither the Defendant nor any of Haight Realty's insiders objected to or otherwise opposed the allegations set forth above.

## THE COMMITTEE'S STANDING AND AUTHORITY

62. Pursuant to Article XI of the Plan, the Committee has standing and the authority to commence and prosecute the claims alleged in this Complaint.

## THE DEFENDANT

63. Defendant is an insider of Haight Realty, the Debtor in the above-captioned main bankruptcy case.

64. Defendant at all times acted adversely to the interests of Haight Realty and its customers.

## NATURE OF THE CAUSES OF ACTION

65. Upon information and belief, and subject to amendment as additional information

18

becomes available, Defendant at all times acted adversely to the interests of Haight Realty and its customers, thereby causing Haight Realty to suffer actual damages.

66.    Defendant was obligated to be an honest real estate developer and fiduciary.

67.    Upon information and belief, and subject to amendment as additional information becomes available, Defendant duped individuals into investing in the Real Property through deceptive business practices, defalcated common law and New York Lien Law fiduciary duties through misappropriating and diverting funds away from Haight Realty for their own personal gain, and interfered with the Trustee's administration of the Debtor's estate.

68.    At all times relevant hereto, the Debtor was insolvent in that: (i) its assets were worth thousands to millions of dollars less than the amount of its liabilities; (ii) it could not meet its obligations as they came due; and/or (iii) at the time of the Transfer(s) to, or for the benefit of, the Defendant described herein, the Debtor was left with insufficient capital.

69.    This adversary proceeding is being commenced pursuant to, *inter alia*, Bankruptcy Code sections 105(a), 542, 544, 550(a), and 551, 28 U.S.C. § 2201, N.Y. Lien Law, N.Y. Gen. Bus. Law, New York Civil Practice Law and Rules ("N.Y. C.P.L.R."), New York common law, and other applicable law, for a constructive trust, an accounting, and to recover money improperly received by Defendant from Haight Realty due to Defendant's fraud, breaches of corporate and N.Y. Lien Law fiduciary duties, unfair and deceptive business practices, conversion, negligence, and unjust enrichment, as well as for declaratory relief and an injunction entered against Defendant forever barring them from practicing or otherwise participating in the sale, development, or investment in commercial and residential real estate.

70.    The Committee's investigation is ongoing and the Committee reserves the right to supplement the allegations and claims made in this Complaint.

## COUNT ONE
### TURNOVER AND ACCOUNTING
### 11 U.S.C. § 542

71.     The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

72.     The transfers received by Defendant from Haight Realty constitute property of the estate to be recovered and administered pursuant to Bankruptcy Code section 541.

73.     As a result of the foregoing, pursuant to Bankruptcy Code section 542, the Committee is entitled to the immediate payment and turnover from the Defendant of any and all transfers made by Haight Realty, directly or indirectly, to Defendant.

74.     As a result of the foregoing, pursuant to section 542 of the Bankruptcy Code, the Trustee is also entitled to an accounting of all such transfers received by any Family Defendant from Haight Realty, directly or indirectly.

## COUNT TWO
### FRAUD
### New York Common Law

75.     The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

76.     As set forth above, Defendant defrauded Haight Realty's customers by using a variety of predatory tactics which led to the depletion and devaluation of Haight Realty's assets.

77.     Defendant's misrepresentations prior to and throughout these bankruptcy proceedings were materially false.

78.     Defendant intended to deceive Haight Realty's customers and the public at large.

79.     Haight Realty's customers believed and justifiably relied upon Defendant's misrepresentations.

80.    Had Defendant been truthful about the true intent of Haight Realty's insiders to use the corporation as a front for their ongoing real estate development scheme, Haight Realty's customers would not have invested.

81.    As a result of such reliance, Haight Realty's customers sustained actual damages (including both pecuniary and non-pecuniary damages).

82.    Defendant's conduct was willful, malicious and calculated.  It was egregious on every level; it was a virtually larcenous scheme.

83.    As a result of Haight Realty's customers' reasonable reliance upon Defendant's misrepresentations, the Committee is entitled to actual damages, punitive damages, and costs.

84.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT THREE
### BREACH OF CORPORATE FIDUCIARY DUTY
### New York Common Law; 28 U.S.C. § 2201

85.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

86.    Defendant had relationships of trust and confidence with Haight Realty, held managerial and/or supervisory responsibilities at Haight Realty during the relevant time period, and consequently had fiduciary duties to act in the best interest of—and for the benefit of—Haight Realty, its customers, and its contract counterparties and creditors.

87.    The fiduciary duties owed by Defendant included duties of care and loyalty to Haight Realty, its customers, and its contract counterparties and creditors, and duties to act in good faith. Defendant also had a duty not to waste or divert the assets of Haight Realty, a duty not to exploit corporate opportunities for their own benefit, and a duty not to act in furtherance of their own personal interests at the expense of Haight Realty, its customers, and its contract counterparties and creditors.

88.    Defendant acted in breach of the fiduciary duty owed to Haight Realty, its customers, and its contract counterparties and creditors by, among other things, the misuse of corporate assets, self-dealing, mismanagement, corporate waste, failure to prepare, implement and carry out, or deliberately disregarding, compliance and supervisory responsibilities and policies, and breaches of the Defendant's duty to act with care, loyalty, and good faith and fair dealing as described above.

89.    As a direct and proximate result of the conduct by Defendant, Haight Realty, its customers, and its contract counterparties and creditors were damaged.

90.    By reason of the above, the Committee is entitled to an award of compensatory damages and disgorgement of all sums received by Defendant from Haight Realty in an amount to be determined at trial, and a declaratory judgment that Defendant's practices violated their fiduciary duties.

91.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT FOUR
### BREACH OF FIDUCIARY DUTY
### New York Lien Law; 28 U.S.C. § 2201

92.     The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

93.     Each of Haight Realty's customers entered into a "contract of sale" with Haight Realty, Defendant, and Haight Realty's insiders for the sale of real property and the improvement thereof by the construction of a building thereon, as defined by N.Y. Lien Law § 71-a(1).

94.     Each of Haight Realty's customers gave "advances" to Haight Realty, Defendant, and Haight Realty's insiders, as defined by N.Y. Lien Law § 71-a(1).

95.     The advances provided to Haight Realty and its insiders constitute assets of a trust, pursuant to N.Y. Lien Law §§ 71-a(2), 70.

96.     Defendant and Haight Realty's insiders held fiduciary duties to to use those monies held in trust to complete construction of the Real Property.

97.     Defendant and Haight Realty's insiders knowingly and intentionally diverted those funds for purposes other than payment of the cost of improvement or satisfaction of any liability to refund such advances in violation of, *inter alia*, N.Y. Lien Law §§ 71-a, 72.

98.     Defendant and Haight Realty's insiders failed to keep and maintain proper books and records for the trust assets received, and for payments issuing from the trust.

99.     As a result of these violations of N.Y. Lien Law, Haight Realty suffered actual damages as set forth above.

100.    For these reasons, the Committee is entitled to actual damages as set forth above, punitive damages, attorneys' fees, costs and a declaratory judgment that Defendant's practices violated their fiduciary duties under N.Y. Lien Law.

101.    Defendant's conduct as alleged herein was purposeful and intentional and was

engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT FIVE
### DECEPTIVE CONSUMER PRACTICES
### N.Y. Gen. Bus. Law § 349

102.     The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

103.     Each of the deceptive acts and practices set forth above constitute violations of New York Gen. Bus. Law § 349 independent of whether these acts and practices constitute violations of any other law.

104.     These deceptive acts and practices were committed in conduct of business, trade, commerce or the furnishing of a service in this state.

105.     Defendant's violations were willful and knowing and committed in bad faith.

106.     Defendant's conduct and statements were materially misleading.

107.     Haight Realty's customers reasonably relied on the written and oral representations made by Defendant when they decided to invest in the Real Property.

108.     As a result of these violations of N.Y. Gen. Bus. Law § 349, Haight Realty suffered actual damages as set forth above.

109.     For these reasons, the Committee is entitled to actual damages as set forth above, three times the actual damages up to $1,000, punitive damages, attorneys' fees, costs and a declaratory judgment that Defendant's practices are deceptive in violation of § 349.

110.    The deceptive acts and practices and false advertising set forth herein are targeted at consumers at large, including unwary and unthinking consumers who buy on impulse motivated by appearances and general impressions as affected by advertising and sales representations.

111.    Each of these acts was consumer-oriented and involve misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

112.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT SIX
### FALSE ADVERTISING
### N.Y. Gen. Bus. Law § 350

113.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

114.    Each of the acts and practices set forth herein, also constitute violations of N.Y. Gen. Bus. Law § 350, which makes false advertising unlawful, independent of whether these acts and practices constitute violations of any other law.

115.    These deceptive acts and practices and this false advertising were committed in the conduct of business, trade, commerce, or the furnishing of a service in this state.

116.    Under N.Y. Gen. Bus. Law § 350, "false advertising" means "advertising, including

labeling, of a commodity . . . if such advertising is misleading in a material respect.  In determining whether any advertising is misleading, there shall be taken into account (among other things) not only representations made by statement, word, design, device, sound or any combination thereof, but also the extent to which the advertising fails to reveal facts material in the light of such representations with respect to the commodity . . . to which the advertising relates under the conditions prescribed in said advertisement, or under such conditions as are customary or usual."

117.    The purpose of Haight Realty was represented as a legitimate real estate development operation offering the hope that investors paying hundreds of thousands of dollars to Haight Realty's insiders in writing, and again orally by Defendant and Haight Realty's other insiders. These written and oral representations are "advertising" as defined by § 350.

118.    Defendant's false advertising was done knowingly and willfully and committed in bad faith.

119.    Haight Realty's customers reasonably relied on the written and oral representations made by Defendant and Haight Realty's other insiders when they decided to invest in Haight Realty.

120.    As a result of these violations of § 350, Haight Realty suffered actual damages.

121.    For these reasons, the Committee is entitled to injunctive relief (enjoining the false advertising practices described above), declaratory judgment that Defendant's practices are deceptive in violation of § 350, actual damages, three times the actual damages up to $10,000, punitive damages, and costs and reasonable attorneys' fees pursuant to § 350.

122.    The deceptive acts and practices and false advertising set forth herein are targeted at consumers at large, including unwary and unthinking consumers who buy on impulse motivated by appearances and general impressions as affected by advertising and sales representations.

123.    Each of these acts was consumer-oriented and involve misleading conduct that is recurring and has a broad impact upon the public, or, in the alternative, such misleading practices

are the types that could easily recur, could potentially impact similarly situated consumers, and are therefore consumer-oriented and harmful to the public at large.

124.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT SEVEN
### INJUNCTIVE RELIEF
### 11 U.S.C. § 105(a); N.Y. Gen. Bus. Law §§ 349, 350

125.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

126.    As set forth above, Defendant has engaged in an ongoing gross and wonton pattern of ongoing fraudulent and damaging conduct targeted at the public at large, which is facilitated and given an air of legitimacy by their association with various real estate development projects.

127.    Defendant's ongoing fraudulent behavior is a violation of, *inter alia*, N.Y. Gen. Bus. Law §§ 349, 350.

128.    As a result of this conduct, the Committee seeks injunctive relief as against Defendant forever barring Defendant from practicing in the real estate industry, so as to prohibit Defendant's fraudulent and damaging conduct targeted at the public at large, including individuals similarly situated to Haight Realty's investors.

## COUNT EIGHT
### CONVERSION
### New York Common Law

129.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

130.    Haight Realty had a possessory right and interest to its assets, including its customers' investment funds.

131.    Defendant converted the funds of Haight Realty's customers when they received or otherwise diverted money originating from Haight Realty's investors that was intended to be used to construct customers' homes. These actions deprived Haight Realty and its creditors of the use of this money.

132.    As a direct and proximate result of this conduct, Haight Realty and its creditors have not had the use of the money converted by Defendant.

133.    By reason of the above, the Committee, on behalf of Haight Realty and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

134.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT NINE
### UNJUST ENRICHMENT
### New York Common Law

135.    The Committee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

136.    Defendant benefited from the receipt of money from Haight Realty, which was the property of Haight Realty and its customers, and for which Defendant did not adequately compensate Haight Realty or provide value.

137.    This enrichment was at the expense of Haight Realty and, ultimately, at the expense of Haight Realty's other customers.

138.    Equity and good conscience require full restitution of the monies received by Defendant from Haight Realty.

139.    Defendant's conscious, intentional, and willful tortious conduct entitles Haight Realty to recapture profits derived by Defendant utilizing monies they received from Haight Realty including, by way of example and without limitation, profits earned from real estate interests they purchased with Haight Realty's customer funds.

140.    By reason of the above, the Committee, on behalf of Haight Realty and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

141.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT TEN
### NEGLIGENCE
### New York Common Law

142.    The Committee incorporates by reference the allegations contained in the previous

paragraphs of this Complaint as if fully rewritten herein.

143.    Defendant had a duty to protect Haight Realty and its customers against unreasonable risks and actions, including without limitation the loss of its customers' assets due to fraud, the self-dealing of management and senior executives, conversion of funds for personal use, the failure to prepare, implement, and carry out compliance and supervisory responsibilities and policies, and other tortious conduct by or unjust enrichment of Defendant and Haight Realty's insiders.

144.    Defendant breached these duties by failing to conform to the appropriate standards of care commensurate with their position at Haight Realty.

145.    As a direct and proximate cause of the actions of Defendant, Haight Realty has been damaged by the Family Defendants' negligence and failure to adhere to standards of appropriate care.

146.    By reason of the above, the Committee, on behalf of Haight Realty and its creditors, is entitled to an award of compensatory damages in an amount to be determined at trial.

147.    Defendant's conduct as alleged herein was purposeful and intentional and was engaged in for the purpose of depriving Haight Realty's customers and the Debtor's estate of property or legal rights or otherwise causing injury, and was despicable conduct that subjected Haight Realty's customers and the Debtor's creditors to cruel and unjust hardship in conscious disregard of their rights, and was performed with fraud, oppression, or malice so as to justify an award of exemplary or punitive damages against Defendant in an amount according to proof at trial.

## COUNT ELEVEN
### CONSTRUCTIVE TRUST

148.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

149.    The assets of Haight Realty have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, preferential transfers, breaches of fiduciary duties, conversions, and other wrongdoing of Defendant for their own individual interests and enrichment.

150.    The Committee has no adequate remedy at law.

151.    Because of the past unjust enrichment of Defendant, the Committee is entitled to the imposition of a constructive trust with respect to any transfer of funds, assets, or property from Haight Realty as well as to any profits received by Defendant in the past or on a going forward basis in connection with Haight Realty.

152.    In addition, upon information and belief, and subject to amendment as additional information becomes available, with the sums Defendant received as a result of fraudulent conveyances, fraudulent transfers, preferential transfers, breaches of fiduciary duties, conversions, and other wrongdoing, Defendant purchased various real properties and other personalty.

## COUNT TWELVE
### ACCOUNTING

153.    The Committee incorporates by reference the allegations contained in the previous paragraphs of this Complaint as if fully rewritten herein.

154.    The assets of Haight Realty have been wrongfully diverted as a result of fraudulent conveyances, fraudulent transfers, preferential transfers, breaches of fiduciary duties, conversions, and other wrongdoing of Defendant for their own individual interests and enrichment.

155.    The Committee has no adequate remedy at law.

156.    To compensate Haight Realty for the amount of monies Defendant diverted from Haight Realty for their own benefit, it is necessary for Defendant to provide an accounting of any transfer of funds, assets, or property received from Haight Realty, as well as to any profits in the past and on a going forward basis in connection with Haight Realty.  Complete information

regarding the amount of such transfers misused by Defendant for their own benefit is within their possession, custody, and control.

**WHEREFORE**, the Committee respectfully requests that this Court enter judgment in favor of the Committee and against the Defendants as follows:

i. On the First Cause of Action, pursuant to of the Bankruptcy Code section 542: (a) that the property that was the subject of the transfers made by Haight Realty to Defendant be immediately delivered and turned over to the Committee; and (b) for an accounting by Defendant of the property that was the subject of the transfers or the value of such property;

ii. On the Second Cause of Action, for fraud: (a) actual damages, (b) incidental and consequential damages, and (c) punitive damages in an amount to be determined at trial;

iii. On the Third Cause of Action, for breaches of fiduciary duty: (a) compensatory damages, (b) disgorgement of all sums received by Defendant from Haight Realty for the period in which they were in breach of their fiduciary duties, (c) declaratory judgment that Defendant breached their fiduciary duties, and (d) punitive damages in an amount to be determined at trial;

iv. On the Fourth Cause of Action, for violating fiduciary duties pursuant to N.Y. Lien Law: (a) actual damages, (b) disgorgement of all sums received by Defendant from Haight Realty for the period in which they were in breach of their fiduciary duties, (c) declaratory judgment that Defendant breached their fiduciary duties, and (d) punitive damages in an amount to be determined at trial;

v. On the Fifth Cause of Action, for engaging in deceptive consumer practices under N.Y. Gen. Bus. Law § 349: (a) actual damages, (b) three times actual damages up to $1,000, (c) punitive damages, (d) declaratory judgment that Defendant's acts and practices are deceptive, and (e) injunctive relief (enjoining the deceptive practices described above);

vi. On the Sixth Cause of Action, for violating the false advertising law pursuant to N.Y. Gen. Bus. Law § 350: (a) actual damages, (b) three times actual damages up to $10,000, (c) punitive damages; (d) declaratory judgment that Defendant's engaged in false advertising, and (e) injunctive relief (enjoining the deceptive practices described above);

vii. On the Seventh Cause of Action, for injunctive relief: permanently enjoining Defendant and their counsel, agents, employees and all persons acting under, in concert with, or for them, from engaging in, and continuing to engage in the deceptive acts or practices alleged above and that may yet be discovered in prosecution of this action;

viii. On the Eighth Cause of Action, for the wanton, willful, and malicious conversion of Haight Realty assets, for compensatory and punitive damages in amounts to be determined at trial;

ix. On the Ninth Cause of Action, for unjust enrichment, for compensatory damages in an amount to be determined at trial;

x. On the Tenth Cause of Action, for negligence, for compensatory and punitive damages in an amount to be determined at trial;

xi.  On the Eleventh Cause of Action, for the imposition of a constructive trust upon any transfer of funds, assets, or property received from Haight Realty, including, without limitation, against those properties Defendant purchased with fraudulently diverted Haight Realty funds;

xii.  On the Twelfth Cause of Action, for an accounting of any transfer of funds, assets, or property received from Haight Realty as well as to any profits in the past and on a going forward basis received by the Defendant in connection with Haight Realty;

xiii.  On all Claims for Relief, pursuant to federal common law and N.Y. CPLR §§ 5001 and 5004, awarding the Committee prejudgment interest from the date on which the transfer(s) and any additional transfer(s) were received by Defendant from Haight Realty;

xiv.  Awarding the Committee all applicable interest, costs, and disbursements of this action; and

xv.  Granting the Committee such other, further, and different relief as the Court deems just, proper, and equitable.

Dated:  August 6, 2021
        Buffalo, New York

**GLEICHENHAUS, MARCHESE & WEISHAAR, P.C.**

_____
/s/ Scott J. Bogucki, Esq.

By:  Scott J. Bogucki, Esq.
     43 Court Street, Suite 930
     Buffalo, New York 14202-3100
     Tel.  716/ 845-6446
     Email   sbogucki@gmwlawyers.com

     *Counsel to the Official Committee of Unsecured Creditors*